AO 106 (Rev. 06/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED
NOV 22 2019
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

1 Cellphone
Seized as FP&F No. 2020250400007601

Case No. **19MJ5204**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference

located in the _____Southern_____ District of _____California_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 952 & 960, 963; | Possession with intent to Distribute a Controlled Substance; Importation of a |
| 31 USC 5332 | Controlled Substance; Conspiracy to commit same; Bulk Cash Smuggling |

The application is based on these facts:
See attached Affidavit, incorporated herein by reference

- ☐ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Lindsey Fitch, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 11/22/19

_____
*Judge's signature*

City and state: San Diego, California      Hon. Bernard G. Skomal, United States Magistrate Judge
*Printed name and title*

# AFFIDAVIT

I, Special Agent Lindsey Fitch, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic device(s):

> 1 Cellphone
>
> Seized as FP&F No. 2020250400007601
>
> ("**Target Device**")

as further described in Attachment A, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Sections 952, 960 and 963 or Title 31, United States Code, Section 5332, as further described in Attachment B.

2. The requested warrant relates to the investigation and prosecution of Arturo OJEDA-ITURBE ("Defendant") for importing approximately 63.64 kilograms (140.30 pounds) of Cocaine from Mexico into the United States. *See U.S. v. OJEDA-ITURBE* Case No. 19-mj-4406 (S.D. Cal.) at ECF No. 1 (Complaint). The **Target Device** is currently in the secured evidence room located at 880 Front Street, Suite 3200, San Diego, CA, 92101.

3. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Device**, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

## BACKGROUND

4. I have been employed as a Special Agent with Homeland Security Investigations (HSI) since July 2018. I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia. As a federal law enforcement officer, I have received formal training, as well as extensive on the job training, relative to the investigation of narcotics trafficking, money laundering, bulk cash smuggling, transportation, layering, structuring and other techniques used to launder illicit proceeds.

5. During my tenure with HSI, I have participated in the investigation of various drug trafficking organizations involved in the importation and distribution of controlled substances into and through the Southern District of California. I have also participated in the investigation of various money laundering organizations involved in bulk cash smuggling from the United States to Mexico and I am currently assigned to a money laundering task force that primarily investigates these specific crimes.

6. Through my training, experience, and conversations with other members of law enforcement, I have gained a working knowledge of the operational habits of narcotics traffickers, and money launderers, in particular those who attempt to import narcotics into the United States from Mexico at Ports of Entry, and those who attempt to export bulk U.S. currency from the United States into Mexico. I am aware that it is common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones. Because they are mobile, the use of cellular telephones permits narcotics traffickers to easily carry out various tasks related to their trafficking activities, including, *e.g.*, remotely monitoring the progress of their contraband while it is in transit, providing instructions to drug couriers, warning accomplices about law enforcement activity, and communicating with co-conspirators who are transporting narcotics and/or proceeds from narcotics sales.

7. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in narcotics trafficking investigations, I am aware that individuals engaged in drug trafficking commonly store photos and videos on their cell phones that reflect or show co-conspirators and associates

engaged in drug trafficking, as well as images and videos of drugs or contraband, proceeds and assets from drug trafficking, and communications to and from recruiters and organizers.

8. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

    a. tending to indicate efforts to import cocaine, or some other federally controlled substance, from Mexico into the United States;

    b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of cocaine, or some other federally controlled substance, from Mexico into the United States;

    c. tending to identify co-conspirators, criminal associates, or others involved in importation of cocaine, or some other federally controlled substance, from Mexico into the United States;

    d. tending to identify travel to or presence at locations involved in the importation of cocaine, or some other federally controlled substance, from Mexico into the United States, such as stash houses, load houses, or delivery points;

    e. tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

    f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

9. On October 8th, 2019, the Defendant attempted to enter the United States from Mexico at the San Ysidro Port of Entry (POE) while driving a silver Honda Odyssey with California license plate #7FVG370 (vehicle). Subsequent inspection of the vehicle revealed a total of 63.64 KGs of cocaine concealed throughout the vehicle.

10. The Defendant was advised of his *Miranda* rights and given a printed form with those rights. The Defendant stated that he understood his rights and waived them

verbally and by signing the pre-printed form, which he read aloud. During the interview, the Defendant denied knowledge of drugs in the vehicle; however, the Defendant stated that he believed he was crossing money into the United States from Mexico. The Defendant stated that a few months prior to crossing the money, he was approached by a man known as Luis, Last Name Unknown. The Defendant stated that the Defendant's deceased cousin, Raul Ojeda-Rendon, who was killed in Mexico approximately two years ago, owed Luis money. The Defendant stated that Luis said Raul's debt was now the responsibility of the Defendant, and once he crossed the money the debt would be considered paid in full. The Defendant stated that he used the **Target Device** to communicate with unidentified persons working with Luis. The Defendant stated that he made one previous money crossing for Luis.

11. At the conclusion of the interview, the Defendant was given the **Target Device,** which was originally seized from him by the CBP Officers, to call his employer and fiancée. Defendant placed both calls in my presence.

12. In light of the above facts, Defendant's statements, and my own experience, training, and working knowledge of the operational habits of narcotics traffickers, and money launderers, in particular those who attempt to import narcotics into the United States from Mexico at Ports of Entry, and those who attempt to export bulk U.S. currency from the United States into Mexico there is probable cause to believe that Defendant was using the **Target Device** to communicate with others to further the importation of illicit narcotics into the United States and/or export bulk cash into Mexico. Accordingly, I request permission to search the **Target Device** for data beginning on August 8th, 2019 through October 8th, 2019, the date of Defendant's arrest. I am asking for a two-month window since the Defendant indicated that he had communicated with Luis and crossed money for Luis once before.

## METHODOLOGY

13. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is

subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

14. Following the issuance of this warrant, I will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

15. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within 90 days, absent further application to this court.

//

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

16. Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

## CONCLUSION

17. Based on the facts and information set forth above, there is probable cause to believe that a search of the **Target Device** will yield evidence of Defendant's violations of Title 21, United States Code, Sections 952, 960 and 963.

18. Because the **Target Device** was seized at the time of Defendant's arrest and has been securely stored since that time, there is probable cause to believe that such evidence continues to exist on the **Target Device**. As stated above, I believe that the appropriate date range for this search is from August 8th, 2019 through October 9th, 2019.

19. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the item(s) described in Attachment A and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Special Agent Lindsey Fitch
Homeland Security Investigations

Subscribed and sworn to before me this ___22___ day of November, 2019.

Hon. Bernard G. Skomal
United States Magistrate Judge

## **ATTACHMENT A**

### PROPERTY TO BE SEARCHED

The following property is to be searched:

    1 Cellphone
    Seized as FP&F No. 2020250400007601
    (the **"Target Device"**)

The **Target Device** is currently in the secured evidence room located at 880 Front Street, Suite 3200, San Diego, CA, 92101.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of August 8th, 2019 through October 9th, 2019:

a. tending to indicate efforts to import cocaine, or some other federally controlled substance, from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services—such as email addresses, IP addresses, and phone numbers—used to facilitate the importation of cocaine, or some other federally controlled substance, from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of cocaine, or some other federally controlled substance, from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of cocaine, or some other federally controlled substance, from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify efforts to import or export cash from Mexico in to the United States or from the United States into Mexico;

f. tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

g. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952, 960 and 963 or Title 31, United States Code, Section 5332.